UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS P. ATHRIDGE, et al.,

    Plaintiffs,

    v.

AETNA CASUALTY AND SURETY CO.,

    Defendant.

Civil Action No. 96-2708
(RMU/JMF)

## MEMORANDUM OPINION

These matters are before me on Defendant's Motion for Summary Judgment [#197] and Plaintiffs' Motion for Partial Summary Judgment [#198]. For the reasons set forth below, both motions will be denied.

### I. BACKGROUND

This is one of several cases relating to an automobile accident that took place on July 29, 1987, in which then-sixteen-year-old Jorge Iglesias ("Jorge"), driving a car owned by his aunt and uncle ("the Rivases"), struck and severely injured plaintiff Thomas Athridge ("Tommy").[1] In this action, Tommy and his father ("the Athridges") brought suit against Aetna Casualty and Surety Company ("Aetna"), insurer of Jorge at the time of the accident, both in their own right

---

[1] The facts in this case have been thoroughly detailed in previous proceedings. See Athridge v. Aetna Cas. & Sur. Co., No. CIV. A. 96-2708, 2001 WL 214212 (D.D.C. Mar. 2, 2001); Athridge v. Iglesias, No. CIV. A 89-1222, 2000 WL 1780273 (D.D.C. Nov. 14, 2000); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 200 (D.D.C. 1998); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181 (D.D.C. 1998); Athridge v. Aetna Cas. & Sur. Co., No. CIV. A. 96-2708, 1997 WL 732430 (D.D.C. Sept. 23, 1997). For details surrounding the accident, see Athridge v. Rivas, 141 F.3d 357 (D.C. Cir. 1998) ("Rivas I"), and Athridge v. Rivas, 312 F.3d 474, 475-77 (D.C. Cir. 2002) ("Rivas II").

and as Jorge's assignees,[2] for indemnification, bad faith violations, and unfair trade practices.

This Court entered summary judgment in favor of Aetna on all counts. Initially, this Court found Aetna's actions did not breach any fiduciary duty or the duty of due care, good faith, and fair dealing. Athridge v. Aetna, No. CIV. A. 96-2708, 2001 WL 214212, at *5-12. Following additional briefing, this Court also granted summary judgment in Aetna's favor on claims of indemnification, intentional infliction of emotional distress and abuse of process, and unfair trade practices. Athridge v. Aetna Cas. & Sur. Co., 163 F. Supp. 2d 38, 48 (D.D.C. 2001).

On appeal, the D.C. Circuit reversed and remanded the indemnification claim and affirmed all other grants of summary judgment. Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1169-70 (D.C. Cir. 2003). The appellate court affirmed this Court's interpretation of the "reasonable belief" exclusion of Aetna's policy, but found a genuine issue of material fact as to whether Jorge had a reasonable belief in his entitlement to use the car on the day of the accident. Id. Summary judgment for Aetna on the Athridges' indemnification claim was therefore reversed and remanded.

Though the D.C. Circuit found a question of fact for a jury to decide, Aetna again moves for summary judgment on the issue of indemnification. The Athridges move for partial summary judgment to prevent Aetna's defense to their indemnification claim on the basis of estoppel.

## II. DISCUSSION

To prevail on a motion for summary judgment, a party must establish, on the basis of the "pleadings, depositions, answers to interrogatories and admissions on file, together with the

---

[2] See Athridge v. Iglesias, 950 F. Supp. 1187, 1194 (D.D.C. 1996) (ordering Jorge Iglesias to convey his chose-in-action assets to plaintiffs).

affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).  When ruling on such a motion, the Court views the evidence in the light most favorable to the non-moving party.  Reeves v. Sanderson Plumbing, 530 U.S. 133, 150 (2000).

**A.     Estoppel**

On remand, the Athridges argue that Aetna is estopped from raising a defense to the indemnification claim because Aetna did not adequately reserve its rights when Paul Pearson, an attorney paid by Aetna, assisted Jorge's private attorney, Irving Starr, in his defense against the Athridges in a related suit before Judge Greene.  Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Pls. Mem.") at 1.  A brief review of the undisputed facts in this case is in order.  A few days prior to Jorge's trial before the late Judge Greene, Starr ran into Pearson in Arlington court.  Pearson had been retained by Aetna to represent Jorge's parents in a related suit brought by the Athridges, for which Pearson ultimately secured dismissal.[3]  When Starr told Pearson of the upcoming trial and his concern that he would be confronting a substantial and well-financed opponent, represented by a large and prominent law firm, Pearson volunteered to help Starr on what Starr thought was a *pro bono* basis.  Discovery in this case revealed, however, that Pearson convinced Aetna that paying him was in Aetna's interest.  Aetna ultimately paid Pearson for the services he provided Jorge by helping Starr at the trial before Judge Greene.

---

[3] The dismissal of the case against Jorge's parents was later affirmed.  Athridge v. Iglesias, 141 F.3d at 362-64.

Lest its doing so be deemed a waiver of Aetna's insistence that it had no responsibility to defend or indemnify Jorge, Pearson had Jorge sign a document in which Jorge acknowledged that Pearson's assistance to Jorge at trial was not a waiver of Aetna's position that it had no responsibility to Jorge. The document reads in its entirety as follows:

> I, Jorge Iglesias, agree to allow Paul R. Pearson, Arthur, Pearson, & Martin, Ltd., to assist in my defense in the case of Athridge, et al. v. Iglesias, Civ. No. 89-1222 (HHG). I further understand that Mr. Pearson's involvement on my behalf does not constitute a waiver of Aetna's denial of coverage or indemnification of me and that Aetna continues to deny any obligation to me to defend or indemnify me for the claims of Thomas P. Athidge, et al., arising out of the auto/pedestrian accident of July 29, 1987.

Defs. Mem. at 8. The Athridges contend this document fails to adequately reserve Aetna's rights to disclaim liability on their indemnification claim, and as a result Aetna is now estopped from raising a defense in this action.

Offering a legal test without providing any supporting authority, the Athridges assert that Aetna triggered estoppel by (1) undertaking Jorge's defense and (2) doing so without an adequate reservation of rights. Pls. Mem. at 6-7. In response, Aetna argues that Jorge's defense was not under Aetna's control and did not warrant a separate reservation of rights. Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defs. Opp.") at 4. Regardless of the need to reserve rights, according to Aetna, the document Jorge signed for Pearson adequately reserved Aetna's right to defend this claim of indemnification. Id. at 5-7.

The District of Columbia Court of Appeals has acknowledged that estoppel "results when an insurance company assumes the defense of an action or claim, with knowledge of a defense of non-liability under the policy." Diamond Serv. Co., Inc. v. Utica Mut. Ins. Co., 476 A.2d 648,

4

654 (D.C. 1984). The purpose of such an estoppel rule is to prevent an insurance carrier from defending an action while avoiding coverage of the end result without adequate warning to the insured of the potential conflict of interest. Some jurisdictions require a showing of prejudice for estoppel to apply, while other jurisdictions presume prejudice when the insurer assumes the complete defense of the insured. Id. In the District, when an insurer assumes complete control over the insured's defense without a reservation of rights, prejudice is presumed as a matter of law. Walker v. American Ice Co., 254 F. Supp. 736, 742 (D.D.C. 1966). Whether presumed under the law or proven through demonstrated evidence, prejudice is crucial to a finding of estoppel; without a showing of prejudice, no estoppel can be found. Diamond, 476 A.2d at 658.

Even assuming the inadequacy of the reservation of rights at issue in this action, the Athridges fail to show the prejudice critical to an application of estoppel. Nothing indicates Aetna's control of Jorge's defense to allow the presumption of prejudice, and nothing in the evidence suggests prejudice or harm to Jorge as a result of Pearson's assistance to Starr. Without prejudice, the Athridges' claim for estoppel fails as a matter of law.

  *1.* ***Presumption of Prejudice with Control of the Defense***

The District of Columbia requires a showing of control for a presumption of prejudice to apply and warrant estoppel. Walker, 254 F. Supp. at 742. The Athridges argue estoppel is appropriate in this case due to the prejudice resulting when "Aetna assumed, and in fact controlled, the defense of Iglesias at his trial." Pls. Mem. at 7. But the D.C. Circuit has held exactly the opposite. In affirming this Court's finding for Aetna on summary judgment in the Athridges' claim for malpractice, the Circuit addressed the question of Aetna's control over Jorge's defense through Pearson. Athridge v. Aetna, 351 F.3d at 1174-75. The Circuit found the

participation of Starr in Jorge's defense undercut any "undue loyalty to Aetna." Id. at 1174. The Circuit continued by emphasizing that Starr's role in Jorge's defense necessarily prevented Pearson's control over it. "[A]ny Aetna contribution to Jorge's defense seems like a windfall benefit to Jorge." Id. at 1174-75. Moreover, nothing additional has been shown since the Circuit decision to establish that Aetna controlled Jorge's defense. The absence of such control defeats the Athridges' claim of estoppel on the basis of presumed prejudice.

### 2. *Prejudice Shown through Evidence*

Without a presumption of prejudice as a result of Pearson's control of Jorge's defense, we turn to the evidence to determine if Jorge was in fact prejudiced by Pearson's participation in his defense. Again, nothing in the record demonstrates that Pearson's involvement prejudiced Jorge's defense in any way whatsoever. In fact, the interests of Jorge and Aetna in the matter before Judge Greene were completely aligned. As I stated in my opinion of March 2, 2001, "neither Jorge nor Aetna had any interest, let alone conflicting ones, in the resolution of the Athridges' suit against Jorge." Athridge v. Aetna, No. CIV. A. 96-2708, 2001 WL 214212 at *9.

The Athridges have had every opportunity to establish why the defense of Starr and Pearson was in any way inadequate. First, as I have previously indicated, Judge Greene, who presided over the trial, found no deficiency in Jorge's defense because of Pearson's participation. My independent review of the record in this action again concluded there was no showing of any kind of malpractice by Pearson (or, for that matter, by Starr). Id. at *8, 10. As I stated at that time, "[n]o one ever accused the late Judge Greene of not having an independent mind. . . . The notion that Judge Greene was mislead by a lawyer's incompetence to find in Tommy's favor borders on the fatuous." Id. at *10. Six months later, in analyzing the Athridges' claim that

Aetna's actions constitute unlawful trade practices in violation of the D.C. Consumer Protection Procedures Act, D.C. § 28-3905(k)(1), I again found that "Jorge suffered no actual damages from anything Aetna is said to have done to him or failed to tell him." Athridge v. Aetna, 163 F. Supp. 2d at 56. Finally, after reviewing the record, the Circuit affirmed the findings of this Court as to those issues and found that the Athridges presented no evidence that Pearson breached any duty to Jorge or pursued Aetna's interests as opposed to Jorge's. Athridge v. Aetna, 351 F.3d at 1174. Thus, the Athridges have been given multiple opportunities to show some deficiency in Pearson's representation to result in prejudice to Jorge. After yet another review of the record on this motion, there is simply no indication that Pearson's involvement in Jorge's defense caused any inadequacy in Jorge's representation or that the result of the trial would have been any different but for Pearson's involvement. The Athridges therefore cannot support their claim for estoppel with the evidence presented because nothing in the evidence reveals prejudice to Jorge by Pearson's contribution to his defense.

### 3. *Cases Bearing on a Reservation of Rights*

Notwithstanding the absence of prejudice, to support their motion for partial summary judgment, the Athridges point to National Union Fire Insurance, where an insurer who defended a suit without an adequate reservation of rights was estopped from asserting an otherwise applicable exclusion to coverage. National Union Fire Ins. Co. of Pittsburgh v. Aetna Cas. & Sur. Co., 384 F.2d 316, 318 (D.C. Cir. 1967). National Insurance differs from this case in key respects. In National Insurance, the lawyers on the insured's behalf were the defendant's only counsel in a third-party action, whose services were secured by the insurance company. Id. at 318. Unquestionably in control of the insured's defense, the insurer failed to demonstrate

affirmatively that its assumption of the defense was nonprejudicial.  Id.  Furthermore, the defense counsel "acted as [the insurer's] representatives and conformably with its directions."  Id. at 317.  The National Union court did not need to confront the adequacy of a reservation of rights because the insurance company conceded no effort was made to do so.  Id. at 319.  Estoppel applied where National Union failed to secure a reservation of rights while completely assuming the defense of the insured.

The Athridges' additional reliance on Continental Casualty is similarly misplaced.  Plaintiff's Reply Memorandum in Support of Motion for Partial Summary Judgment ("Pls. Reply") at 4.  The Athridges argue that, like Aetna, the insurer in Continental Casualty was subject to estoppel for failure to adequately reserve its right to dispute coverage despite lacking control over the defense of the insured.  Id.; Continental Cas. Co. v. Hartford Ins. Co., 116 F.3d 932 (D.C. Cir. 1997).  The dispositive issue in Continental Casualty, however, did not deal with estoppel whatsoever.  Instead, the question addressed the apportionment of liability between two insurers who provided consecutive terms of medical insurance, where the proximate cause of the plaintiff's injuries could have occurred in the course of either policy.  Continental Cas., 116 F.3d at 939.  In a footnote, the court dismissed Hartford's denial of coverage due to the insured's failure to comply with notice requirements because "[e]ven if Hartford reserved the right to deny coverage, it did so only on the ground that there was no liability or causation during its policy period, not on late notice grounds.  Therefore . . . Hartford has waived the right to raise late notice as a defense to coverage."  Id. at 393 n.8.  The court allowed the liability defense to continue, though ultimately the defense failed on the merits.  To follow the logic of Continental, then, Aetna should continue with its defense to indemnification on the basis of its "reasonable

belief" policy exclusion.

The Athridges have provided no evidence of prejudice or harm as a result of Pearson's role in Jorge's defense, either by presumption with Aetna's control of the defense or by demonstrating prejudice through the evidence on this record. Athridge v. Aetna, 351 F.3d at 1174. The Athridges cannot point to any place where Jorge's defense was "hampered or harmed" by Aetna's role, nor where Jorge was "lulled into reliance on the insurer by the insurer's actions." See Diamond, 476 A.2d at 658. Similar to the insured in Diamond, Jorge had independent counsel, Irving Starr, "readily available" at all times who could have raised a question with respect to the reservation of rights letter Jorge signed. See id. Without the necessary showing of prejudice to Jorge as a result of Aetna's role in his defense, the Athridges' motion for partial summary judgment on the basis of estoppel is denied.

**B.   Indemnification**

In its motion for summary judgment, Aetna repeats once again its argument for the dismissal of the Athridges' indemnification claim on several grounds. Many of these grounds have been decided in multiple prior opinions dating back nearly ten years. To the extent necessary, those arguments are revisited in light of Aetna's motion.

*1.   Preclusion*

Aetna previously argued for dismissal of the Athridges' indemnification claim based on a theory of claim preclusion. Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defs. Mem.") at 18. Aetna argued that the Athridges were barred from raising the current indemnification claim in this action for failure to assert indemnification against Aetna in their 1992 declaratory suit. This Court dismissed Aetna's preclusion theory, and

the D.C. Circuit affirmed on the merits. Athridge v. Aetna, 351 F.3d at 1170. Now, without citing any legal authority to support its position, Aetna argues the finding of the D.C. Circuit that Aetna did not meet its burden of proving that the Athridges could have brought a declaratory action in 1992 is somehow an invitation to re-litigate the issue. Therefore, Aetna is "supplementing its defense" of claim preclusion on remand. Defs. Mem. at 18.

     Aetna's revival of the claim preclusion argument is foreclosed as a matter of law. The D.C. Circuit clearly affirmed that Aetna did not meet its burden of proof for a claim preclusion defense. Athridge v. Aetna, 351 F.3d at 1170. An affirmed finding that Aetna failed to meet the required burden of proof is not an offer by the Circuit to Aetna to attempt to meet that burden at a later time. The Circuit did not reverse and remand the question of claim preclusion to this Court for further proceedings. As a result, the affirmed decision of the Circuit court forecloses this claim as a matter of law. Role Models Am., Inc. v. Penmar Dev. Corp., 394 F. Supp. 2d 121, 129 (D.D.C. 2005).

     Moreover, Aetna overlooks its many failed attempts to preclude the Athridges' claim for indemnification. This Court, in declining to reconsider the previous decision of Judge Greene, found that the Athridges' claim for indemnification could not have been raised in its prior action for two reasons. Not only does Aetna's own policy provision preclude an indemnification claim prior to a finding of liability, but the different set of operative facts giving rise to this claim as opposed to the suit for negligence of Jorge's parents allows the Athridges' claim for indemnification presently to move forward. Mem. Op., Nov. 9, 2000, at 7-10. Nothing in the facts have changed since this determination. Aetna's attempt to re-litigate a bar to the Arthridges' claim on the basis of preclusion is denied.

### 2. *Policy Language*

Aetna previously argued, in the alternative, that the language of the policy itself precluded coverage of Jorge's accident and should bar the Athridges' indemnification claim. Defs. Mem. at 13. Aetna pointed specifically to Exclusion 11 of Aetna's policy, which states that Aetna "does not provide Liability Coverage . . . [f]or any person using a vehicle without a reasonable belief that the person is entitled to do so." Id. On Aetna's prior motion for summary judgment in this action, this Court found that, as a matter of law, Jorge could not have a "reasonable belief" in his entitlement to drive the Rivases' car without permission to do so. Athridge v. Aetna, 163 F. Supp. 2d at 47-52. The D.C. Circuit affirmed that the interpretation of Exclusion 11 could bar coverage of Jorge if he lacked a reasonable belief to use the vehicle, but the Circuit remanded because "there are material facts in dispute as to whether that exclusion, so construed, applies." Athridge v. Aetna, 351 F.3d at 1172. Citing its finding in Rivas II based on the same evidence, the Circuit reiterated that the evidence submitted by the Athridges "was enough to create a jury question as to whether Jorge had consent to use the car on the day of the accident." Id. at 1170. The Circuit thus reversed this Court's finding of summary judgment on the indemnification claim.

Now, Aetna again seeks summary judgment on the indemnification claim due to Jorge's lack of reasonable belief in his entitlement to use the vehicle at the time of the accident. Defs. Mem. at 13. This time, however, Aetna argues that, permission notwithstanding, Jorge could not as a matter of law have a reasonable belief that he was entitled to use the vehicle in question because he was not a licensed driver. Defs. Mem. at 15. Aetna's argument fails to eliminate the fact question remanded by the Circuit for jury decision.

As Judge Green rightly stated in denying Aetna's initial motion for summary judgment in this case, the absence of a driver's license, as with the absence of consent, is not dispositive of the issue of coverage by Aetna's policy. Mem. Op., Jul. 24, 1997, at 7-8. The question of "reasonable belief" goes to the state of mind of the vehicle's operator and poses a fact question for a jury. See id. (quoting Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co., 392 S.E.2d 377, 379 (N.C. 1990)). Thus, a finding of "reasonable belief" turns on the driver's state of mind, which in turn depends on a myriad of factors, including but not limited to consent of the vehicle's owner and the possession of a driver's license by the vehicle's operator. See Gen. Accident Fire & Life Assurance Corp., Ltd. v. Perry, 541 A.2d 1340 (Md. 1988).

Jurisdictions are split on whether a "reasonable belief" policy exclusion bars coverage when the driver lacks a valid driver's license. Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 864 A.2d 368, 373 (N.H. 2005). As explained in detail previously by this Court, without controlling law in the precedent of the District of Columbia, courts in this circuit look to the law of Maryland for guidance. Athridge v. Aetna, No. CIV. A. 96-2708, 2001 WL 214212, at *3-4. Without authority in the District of Columbia on point, we turn to Maryland, where the only case to address an unlicensed driver's "reasonable belief" in an entitlement to drive a vehicle fails to dispose of the issue. See Perry, 541 A.2d 1340. The many cases cited by Perry and both parties in this action examine the absence of a license as a *factor* in the driver's state of mind as to "reasonable belief" without being dispositive on that basis alone.

In Perry, the driver of a truck involved in an accident was denied coverage where he lacked a reasonable belief in his entitlement to drive the truck. Id. at 1351. In considering the reasonableness of the driver's belief that he was entitled to drive the vehicle, the Perry court

referenced several factors identified by other courts as key to the issue of objective reasonableness, including 1) whether the driver had express permission to use the vehicle; 2) whether the driver's use of the vehicle exceeded the permission granted; 3) whether the driver was legally entitled to drive the vehicle; 4) whether the driver had ownership or other possessory right in the vehicle; and 5) whether there were some form of relationship between the driver and the insured or the insured's agent to lead the driver to believe he was entitled to operate the vehicle. Id. at 1350. The driver in Perry "knew he did not have permission to take the truck on the public highway at the time and place of the accident; he knew he did not have a license to drive; he knew he could not obtain insurance without a license; he knew he had been previously apprehended by the police for driving without a license and he admitted to being less than candid with [the insurance company] regarding his use of the truck." Id. at 1351. Though the driver did not have a license, many additional factors–factors not evident in the case at bar–contributed to the court's finding of no "reasonable belief" in his entitlement to drive the car.

Aetna's cited authority is not to the contrary. See Defs. Mem. at 15. Though the court in Progressive excluded coverage for an unlicensed driver with permission to drive the vehicle later involved in an accident, the absence of a license was not dispositive; the court specifically limited its holding "to the undisputed facts of this case," which included the driver's questionable belief in the permission granted to him to operate the vehicle. Progressive v. Concord, 864 A.2d at 371, 377. The driver in Century, operating a vehicle with a suspended license, lost his license fourteen years prior to the accident, had been arrested several times for driving with a suspended license, and had been told by an insurance agent that he would not be covered by any insurance policy. Century Nat. Ins. Co. v. Tracy, 789 N.E.2d 833, 836 (Ill. Ct. App. 2003). In only one

case cited by Aetna does the court dispose of the question of "reasonable belief" based strictly on the absence of a driver's license, and the court does so while acknowledging the lack of consistency in that approach among other jurisdictions. Huggins v. Bohman, 578 N.W.2d 326, 329 (Mich. Ct. App. 1998). In contrast, other courts have found a "reasonable belief" even without a valid driver's license. See, e.g., Blount v. Kennard, 612 N.E.2d 1268 (Ohio Ct. App. 1992) (finding "reasonable belief" for an unlicensed driver operating vehicle with permission); Farm and City Ins. Co. v. Gilmore, 539 N.W.2d 154 (Iowa 1995) (same); Aetna v. Nationwide, 392 S.E.2d 377 (precluding summary judgment where fact issue arose of possible "reasonable belief" as to whether unlicensed driver had permission to operate vehicle). With Perry as the operating precedent for this Court, the absence of a license does not operate in a vacuum to dispose of the question of a driver's "reasonable belief" in his entitlement to drive a vehicle involved in an accident.

    *3.*    ***Estoppel***

In opposition to Aetna's motion, the Athridges argue that Aetna is estopped from raising the license issue because Aetna failed to list Jorge's lack of license as a basis for its reservation of rights when Pearson assisted Starr in Jorge's defense. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pls. Opp.") at 3. The estoppel argument is addressed in detail above. Furthermore, as "reasonable belief" goes to state of mind and formulates a question of fact for the jury, Aetna, despite the Athridges' claim to the contrary, is not introducing a wholly separate defense at this stage by raising the license issue. At any rate, the Athridges concede the license issue belongs with the jury alongside the question of consent as factors to consider in determining Jorge's state of mind as to whether he had "reasonable belief"

in his entitlement to use the Rivases' car on the day of the accident.  Id. at 3.

C.     **The Effect of the 1996 Declaratory Judgment**

In its motion for summary judgment, Aetna again argues that the Athridges' claim for indemnification is barred because the Athridges "stand in the shoes" of Jorge and cannot therefore sue Aetna for indemnification.  Defs. Mem. at 30.  As has been stated in many decisions throughout this series of lawsuits, Aetna's claims are completely without merit.  In his Order of July 24, 1997, Judge Greene held that the Superior Court declaratory action had no preclusion effect on the Athridges because Aetna failed to join the Athridges in that suit.  As stated in my Order of November 9, 2000, responding to Aetna's request for reconsideration, this Court similarly found the Athridges are not bound by the declaratory judgment action because they simply were not a party to that action.  See Martin v. Wilks, 490 U.S. 755, 762 (1989).  This fact remains unchanged no matter how often Aetna raises the argument.  A declaratory judgment may only bar re-litigation by the parties of the issue actually litigated by them in the declaratory judgment action.  Horn & Hardart Co. v. Nat'l Rail Passenger Corp., 843 F.2d 546, 549 (D.C. Cir. 1988).  Again, Aetna's claim on this point is denied.

D.     **Post-Judgment Interest**

Both parties move for summary judgment relating to the responsibility for interest payments on the judgment for which the Athridges seek indemnification.  There is no reason to reach that question until liability has been decided and I will not do so now.  The question of interest on a judgment is premature, and thus summary judgment as to that issue is denied.

15

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment are denied. An Order accompanies this Memorandum Opinion.

                                                          _____
                                                          JOHN M. FACCIOLA
                                                          UNITED STATES MAGISTRATE JUDGE

Dated: