**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| THOMAS P. ATHRIDGE*, et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 96-2708 (JMF) |
| | ) |
| AETNA CASUALTY AND SURETY | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

_____)

**MEMORANDUM OPINION**

Before the Court is <u>Plaintiffs' Motion For Judgment as a Matter of Law or</u> <u>Alternatively for a New Trial</u> [#261] ("Motion").

## I.   <u>Background</u>

Thomas P. ("Tommy") Athridge suffered a serious injury on July 29, 1987, when an automobile driven by Jorge Iglesias ("Jorge") struck Tommy and threw him against the car's windshield.  The car was owned by Jorge's uncle and aunt, Francesco and Hilda Rivas, and their restaurant, Churreria Madrid.  At the time of the accident, Aetna Casualty and Surety Company ("Aetna") had issued an automobile liability insurance policy (the "Policy") to Jorge's father, Jesus Iglesias.

The Athridges' goal of securing compensation for Tommy engendered three distinct lawsuits.  The Athridges brought the first suit to impose liability on Jorge, the underage driver, who was driving the Volkswagen Jetta when he hit Tommy.  The late Judge Harold Greene, trying the case without a jury, concluded that Jorge had the last clear chance to avoid the collision, which excused any contributory negligence by

Tommy, and awarded Tommy and his father a total of $5,510,010.78 in damages.

Athridge v. Iglesias, 950 F. Supp. 1187 (D.D.C. 1996), aff'd, 1997 WL 404854 (D.C. Cir. June 30, 1997).

The second lawsuit was intended to impose liability upon the owners of the car, the Rivases, and their restaurant, Churreria Madrid.  Initially, this Court granted summary judgment to the Rivases but the court of appeals reversed.  Athridge v. Rivas, 312 F.3d 474, 479 (D.C. Cir. 2002).  Upon remand, a jury returned a verdict in favor of the Athridges.  The jury concluded that the Rivases had not established by a preponderance of the evidence that "they did not consent to Jorge Iglesias' use of their car on the day of the accident."  Athridge v. Iglesias, Civ. Nos. 89-1222 & 92-1868, Verdict Form [#224].[1] Judgment was then entered against the Rivases for the $5,510,010.78 that Judge Greene had awarded Tommy and his family.[2]  The jury's verdict meant that GEICO, the Rivases' insurer, might have to pay Jorge what Judge Greene had awarded Tommy and his father in 1996 but, while an appeal from the judgment based on the jury verdict was pending, a settlement between the Rivases and GEICO was reached.  See Gov't Employees Ins. Co. v. Rivas, --- F. Supp. 2d ---, 2008 WL 3918062 at *1 (D.D.C. Aug. 26, 2008).

In this third case, the Athridges initially brought suit against Aetna, Jorge's parent's insurer, for breach of fiduciary duty, bad faith violations, intentional infliction of emotional distress, indemnification, and unfair trade practices.  This Court entered summary judgment in favor of Aetna on all counts.  See Athridge v. Aetna Cas. & Sur.

---

[1] See Athridge v. Iglesias, 355 F. Supp. 2d 230, 233-34 (D.D.C. 2005) (explaining jury instructions to be given as to burden of proof).

[2] See generally Athridge v. Iglesias, 464 F. Supp. 2d 19 (D.D.C. 2006); Athridge v. Rivas, 236 F.R.D. 6 (D.D.C. 2006); Athridge v. Rivas, 421 F. Supp. 2d 140 (D.D.C. 2006) (all dealing with issues arising out of entry of judgment based on the jury verdict).

Co., 163 F. Supp. 2d 38, 48 (D.D.C. 2001); <u>Athridge v. Aetna Cas. & Sur. Co.</u>, No. 96-

CIV-2708, 2001 WL 214212 at *5-12 (D.D.C. Mar. 2, 2001).  On appeal, the D.C.

Circuit reversed and remanded only the indemnification claim, finding that there was a

genuine issue of material fact as to whether Jorge had a reasonable belief in his

entitlement to use the Rivases' car on the day of the accident.  <u>Athridge v. Aetna Cas. &</u>

<u>Sur. Co.</u>, 351 F.3d 1166, 1169-70 (D.C. Cir. 2003).  If Jorge did not have a reasonable

belief that he could drive the car, then Exclusion 11 of Aetna's policy eliminates

coverage of Jorge, and consequently the plaintiffs could not succeed on their

indemnification claim.

 A jury trial began on February 14, 2007, and one week later a jury found that

Aetna had established by a preponderance of the evidence that Jorge did not have a

reasonable belief that he was entitled to use the Rivases' car on the date of the accident.

<u>Verdict Form</u> [#245].  On September 19, 2007, the clerk entered judgment in favor of

Aetna.  <u>Judgment</u> [#260].

## II. <u>Plaintiffs Are Not Entitled to Judgment as a Matter of Law</u>

 Plaintiffs previously moved for summary judgment based on estoppel or

preclusion by defense.  <u>Plaintiffs' Motion for Partial Summary Judgment</u> [#198].  That

motion was denied.  <u>Athridge v. Aetna Cas. & Sur. Co.</u>, No. 96-CIV-2708, 2006 WL

2844690 at *1 (D.D.C. Sept. 29, 2006).

 This defense is based on the following facts summarized in that opinion: A few

days prior to the start of the trial before Judge Greene, Irving Starr, who was representing

Jorge, ran into a lawyer he knew named Paul Pearson.  Pearson had been retained by

Aetna to represent Jorge's parents in a related suit brought by the Athridges that was

dismissed. See Athridge v. Iglesias, 141 F.3d 357 (D.C. Cir. 1998). When Starr told Pearson of the upcoming trial and his concern that he would be confronting a substantial and well-financed opponent represented by a large and prominent law firm, Pearson volunteered to help Starr on what Starr thought was a *pro bono* basis. Discovery in this case revealed, however, that Pearson convinced Aetna that paying him was in Aetna's interest. Aetna ultimately paid Pearson for the services he provided Jorge by helping Starr at the trial before Judge Greene. Athridge, 2006 WL 2844690 at *1.

Lest its doing so be deemed a waiver of Aetna's perpetual insistence that it had no responsibility to defend or indemnify Jorge because he did not have a reasonable belief that he was entitled to use the car,[3] Pearson had Jorge sign a document[4] in which Jorge acknowledged that Pearson's assistance to Jorge at trial was not a waiver of Aetna's position that it denied coverage. Athridge, 2006 WL 2844690 at *2.

The Athridges contended that this document failed to adequately reserve Aetna's rights to disclaim liability on their indemnification claim, and as a result Aetna was estopped from raising a defense to the indemnification claim because it undertook Jorge's defense without an adequate reservation of rights. Id. The Athridges moved for summary judgment on this ground and the motion was denied. Id.

---

[3] Exclusion 11 of the Aetna policy states that Aetna "does not provide Liability Coverage . . . [f]or any person using a vehicle without a reasonable belief that the person is entitled to do so." Athridge, 2006 WL 2844690 at *5.

[4] The document read:

> I, Jorge Iglesias, agree to allow Paul R. Pearson, Arthur, Pearson, & Martin, Ltd., to assist in my defense in the case of Athridge, et al. v. Iglesias, Civ. No. 89-1222 (HHG). I further understand that Mr. Pearson's involvement on my behalf does not constitute a waiver of Aetna's denial of coverage or indemnification of me and that Aetna continues to deny any obligation to me to defend or indemnify me for the claims of Thomas P. Athridge, et al., arising out of the auto/pedestrian accident of July 29, 1987.

They later renewed that motion, and also sought partial summary judgment on their entitlement to interest under the Supplementary Payments provision of the Aetna policy.  Plaintiffs' Renewed Motion for Partial Summary Judgment [#252].  That motion was also denied, and, in the same opinion, Aetna was granted summary judgment on plaintiffs' estoppel by defense claim.   Athridge v. Aetna Cas. & Sur. Co., No. 96-CIV-2708, 2007 WL 2493479 (D.D.C. Sept. 5, 2007).

In now seeking judgment as a matter of law, plaintiffs do little more than repeat the unavailing arguments they previously made in support of their motions for summary judgment.  Compare Memo at 3-10 with Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment [#198]; Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment [#204]; Plaintiffs' Memorandum in Support of Their Renewed Motion for Partial Summary Judgment and in Opposition to Defendant's Renewed Motion for Summary Judgment [#253]; Plaintiffs' Reply in Support of Their Renewed Motion for Partial Summary Judgment [#257].  Indeed, they readily concede that the issues they now present in the Motion were "just recently decided" by the Court, and that they "raise these issues again here to preserve such issues for appeal."  Memo at 3-4.  Because the plaintiffs raise no new arguments, their motion for judgment as a matter of law will be denied for the reasons stated in the Court's previous opinions.

## III.   Plaintiffs Are Not Entitled to a New Trial

A court should only grant a motion for new trial pursuant to Rule 59 "where the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'"  Nyman v. FDIC, 967 F. Supp. 1562, 1569 (D.D.C. 1997) (quoting Sedgwick v. Giant Food, Inc., 110 F.R.D.

175, 176 (D.D.C. 1986)).  "Generally, a new trial may only be granted when a manifest

error of law or fact is presented."  Long v. Howard Univ., 512 F. Supp. 2d 1, 6 (D.D.C.

2007) (quoting In re Lorazepam & Clorazepate Antitrust Litig., 467 F. Supp. 2d 74, 87

(D.D.C. 2006)).

Plaintiffs present numerous arguments in support of their motion for a new trial,

and those arguments are addressed in turn below.

### 1.      Bifurcation of Trial

The plaintiffs claimed that they were entitled to recover under the Policy pursuant

to two "legal theories."  Plaintiffs' Memorandum Concerning the "Scope of Trial" [#210]

at 1.  The first theory was that there was coverage because "Jorge Iglesias at the time of

the accident was Jesus Iglesias' son and lived in his father's household."  Id.  Coverage

under that theory was subject to the "reasonable belief" exclusion.  The second theory

was that there was coverage "because Aetna in fact assumed the defense of Jorge Iglesias

at trial, with knowledge of the ground of exclusion on which Aetna now relies, and

thereafter conducted that defense in a manner prejudicial to Jorge Iglesias' interests as

someone who was both a covered person under the policy and someone who was being

represented by an attorney under Aetna's control."  Id. at 1-2.

On December 28, 2006, the Court issued a minute order limiting the scope of the

trial "to the question of whether Jorge Iglesias had a 'reasonable belief' to drive the

automobile at the time of the accident at issue."  Plaintiffs argue that "the issue of

whether Aetna in fact defended Jorge and whether it adequately reserved its rights"

should have been included in the trial because their prior motion for summary judgment

on the issue of estoppel by defense had been denied.  Memo at 11 (citing Athridge, 2006

WL 2844690).  Plaintiffs argue that resolving this issue was "necessarily a prior step in reaching any conclusions about what evidence was admissible even on the issue of reasonable belief," and failure to resolve it before or during trial had the "cascading effect of making it impossible to properly resolve objections to the admissibility of Judge Greene's opinion or merely judicial notice of the facts found in that opinion."  Memo at 11-12.

The long history of this case establishes that the evidence must be viewed as falling into two categories: what happened before and during the accident, and what happened thereafter.  The evidence of what happened before the accident dealt with whether or nor Jorge could drive a stick shift, and whether he had driven the Jetta or any other car that he was driving on the day of the accident previously.  From this evidence the Athridges wanted the finder of fact to find that, despite his denials, Jorge had driven the Jetta before with his family's knowledge, that his family had not prevented him from doing so, and he therefore had a reasonable belief that he could drive the Jetta on the day of the accident.  The evidence of his driving on the day of the accident dealt with the ease with which he shifted the gears of the Jetta's manual transmission over a route that required him to shift gears as he accelerated, stopped at stop signs or red lights, or downshifted as he decelerated.

The evidence of what happened after the trial deals with how it came to be that a lawyer named Pearson assisted Jorge's lawyer, Irving Starr, in the first case before the late Judge Harold Greene.  In that case, Judge Green concluded that both Jorge and Tommy Athridge (who was severely injured) were negligent, but that Jorge had the last clear chance to avoid the accident. See Athridge, 950 F. Supp. at 1191.

I limited the trial to the issue of Jorge's reasonable belief that he was entitled to drive the car. This meant that the trial focused the evidence on Jorge's abilities to drive the Jetta, and whether, despite his denials, he had driven the Jetta before and was able to drive it well on the day of the accident. As the Athridges would have it, however, the jury that heard that evidence should have also heard the following evidence, that pertained only to how the case before Judge Greene was tried and its ultimate result. Specifically, the Athridges wanted the jury to hear:

1.    Starr's testimony that he invited Pearson to help him and that Pearson agreed.

2.    That unbeknownst to Starr and Jorge, Aetna paid Pearson for his services.

3.    Pearson had Jorge sign the reservation of rights.

4.    Pearson and Starr defended Jorge, presenting the contributory negligence case.

5.    Judge Greene rejected that defense and found, on the basis of a mathematical analysis of the evidence, that Jorge had the last clear chance to avoid hitting Tommy. Id. at 1191.

6.    Judge Greene returned a verdict of more than 5 million dollars in Tommy's favor. Id. at 1194.

How could any of this evidence have made it more likely than not that Jorge had a reasonable belief that he was entitled to drive the Jetta? The evidence as to how Starr prevailed upon Pearson to help and how Aetna paid Pearson for his services has nothing whatsoever to do with how Jorge drove the car. Furthermore, evidence of a contradiction between Aetna's position that the policy did not cover Jorge on the day of the accident and its nevertheless paying Pearson to defend Jorge begins with the two lawyers' meeting and ends with the trial before Judge Green. Finally, Judge Green's conclusions that Tommy Athridge was contributorily negligent but Jorge had the last clear chance to avoid

the accident could not possibly have been admitted as relevant and material to proving an estoppel because Aetna denied coverage but nevertheless paid Pearson.

Furthermore, Judge Greene's conclusions are not evidence in the traditional sense but findings by a judge based on evidence.  Assuming that they qualify as "evidence" in the same sense as the evidence in the other five paragraphs, nothing in Judge Greene's opinion speaks to whether Jorge drove the Jetta, or another car with a manual transmission, previously.  His opinion speaks only to how Jorge drove the car that day in the moments before the accident.[5]  Id. at 1188-90.

Finally, as to paragraph 7, the size of the judgment Judge Green rendered, besides being patently irrelevant to whether Jorge had a reasonable belief that he could drive the car, raises a risk of unfair prejudice to Aetna, if the jury either learned advertently, inadvertently or speculated that the Athridges had never been paid any of the verdict Judge Greene awarded.[6]  As the Court stated in the section of the Memorandum Opinion in which the Court granted the defendant's motion in limine, barring the introduction of Judge Greene's findings in this case:

> Therefore, under Rule 403, the prejudice to Aetna by admitting Judge Greene's findings overwhelms any probative value of the decision to the extent that it bears on Jorge's ability to drive the car on the day of the accident. See Nipper [v. Snipes], 7 F.3d [415,] 418 [4th Cir. 1993] ("judicial findings of fact . . . would likely be given undue weight by the jury, thus creating a serious danger of unfair

---

[5] Indeed, and ironically, Judge Greene's only reference to Jorge's entitlement to use the car was his noting in passing that " defendant [i.e. Jorge] took the car without the permission of the owner." Id. at 1189. Understandably, the Athridges have fought mightily over the years to keep the juries from learning about that portion of Judge Greene's opinion no matter how hard they have fought to get the rest of it in evidence.

[6] At the time the case was tried, the Athridges may not have recovered either from Jorge, pursuant to Judge Greene's opinion, or from the jury verdict rendered in the case tried before me against the Rivases, who owned the Jetta Jorge drove when he struck Tommy.  As noted above, however, the Rivases settled with the Athridges for $2.85 million.  See Gov't Employees Ins. Co. v. Rivas, --- F. Supp. 2d ----, 2008 WL 3918062 (D.D.C. Aug. 26, 2008).

> prejudice") (internal citations omitted).  Moreover, as
> Aetna points out, the Athridges have available other
> evidence, namely testimony from Jorge and Thornburg,
> that will bear on Jorge's ability to drive the car with ease.
> Defs. Reply at 14.  Judge Greene's opinion is therefore
> inadmissible and defendant's motion in limine is granted on
> that point.

Athridge v. Aetna Cas. & Sur. Co., 474 F. Supp. 2d 102, 110-11 (D.D.C. 2007).

Rule 42(b) grants the trial court broad discretion to order separate trials of "one or more separate issues"[7] or claims "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); see also 8 James W. Moore et al., Moore's Federal Practice ¶ 42.04[4][a] (3d ed. 2008). While this Circuit has not yet spoken to the issue, all the other Circuits have concluded that the exercise of discretion under Rule 42(b) is judged by an abuse of discretion standard. Id. ¶ 42.20[5][b]. Since the evidence as to Jorge's defense and Judge Greene's determination was so patently distinct from the evidence bearing on whether Jorge had a reasonable belief that he could drive the car, there were no economies lost by limiting the trial to that matter; there was no evidence that was mutually admissible in both trials.  On the other hand, the bifurcation lead to an efficient and economical presentation of the only evidence that bore on reasonable belief and eliminated any potential for unfair prejudice resulting from the size of Judge Greene's award or that at the time of trial the Athridges had not recovered any of it. Indeed, it is as difficult to find how the Court abused its discretion by limiting the trial to the reasonable belief issue as it is to find how the Athridges were prejudiced by it.

---

[7] Note how the Athridges muddle the principle of the law of judgments barring the splitting of a claim, Motion at 11, and the power of the Court under Rule 42 to have a separate trial as to distinct issues and claims. They cite the Restatement (Second) of Judgments § 24 for the proposition that "different theories of recovery do not constitute different claims" and that it is improper to split a claim. Id. But, Rule 42(b) expressly authorizes requiring that the proof of a certain issue, bearing on the validity of a claim, be tried separately from another issue bearing on that claim.  Fed. R. Civ. P. 42(b) ("[T]he court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims or third-party claims.").

### 2.   <u>Order of Trial</u>

On February 9, 2007, this Court held that Aetna could open and close the case, essentially acting as plaintiffs for purposes of the trial, because it bore the burden on the lone issue of the reasonable belief exclusion.  <u>Athridge</u>, 474 F. Supp. 2d at 106.  Plaintiffs argue that this decision was a byproduct of the erroneous decision to bifurcate, and resulted in "the entire narrative of the case [being] distorted."  Memo at 12.

Contrary to the plaintiffs' argument, the "mode and order of interrogating witnesses and presenting evidence" is not driven by their need to present a "narrative," but instead by the Court's determination of what would be most effective for the jury's "ascertainment of the truth."  Fed. R. Evid. 611.  Moreover, this determination is within the "broad discretion" of the court.  <u>United States v. Ballard</u>, 535 F.2d 400, 406 (8th Cir. 1976).  In this case, as in many other cases where an insurer bears the sole burden of proof on an exclusion, the defendant was permitted to open and close the case because "plaintiffs ha[d] absolutely nothing to prove."  <u>Athridge</u>, 474 F. Supp. 2d at 106 (citations omitted).  The Court sees no reason to disturb its prior ruling.

### 3.   <u>Exclusion of "Defense" Evidence</u>

Plaintiffs also take issue with the Court's exclusion of any evidence relating to Aetna's defense of Jorge, which was held to be irrelevant and "tend[ing] to raise collateral issues and confuse the jury."  <u>Athridge</u>, 474 F. Supp. 2d at 108.  Plaintiffs argue that this evidence goes directly to the credibility of Aetna's claim "and to the jury's willingness to believe Aetna's denial of coverage."  Memo at 14.  The fact remains, however, that Aetna's credibility had little, if any, bearing on the issue of whether Jorge

reasonably believed the Rivases had consented to his use of the vehicle.[8]  <u>Athridge</u>, 474

F. Supp. 2d at 108.  Moreover, the admission of that evidence would have entitled Aetna

to introduce countering evidence, all irrelevant to the issue at hand.  <u>Id.</u>  Evidence relating

to Aetna's defense of Jorge was properly excluded pursuant to Rule 403 of the Federal

Rules of Evidence.

      To the extent that plaintiffs believe this issue *should* have been relevant because

the question of Aetna's defense of Jorge *should* have been put before the jury, the Court

again refers to its discussion of bifurcation.

### 4.      Exclusion of *Rivas* Verdict

      Plaintiffs object to the exclusion of evidence related to the verdict in the *Rivas*

case, where a jury found that the Rivases had not shown by a preponderance of the

evidence that they did not consent to Jorge's use of the car.  <u>Athridge</u>, 474 F. Supp. 2d at

108-09; <u>Verdict Form [#224]</u>, <u>Athridge v. Rivas</u>, 355 F. Supp. 2d 230 (D.D.C. 2005).

That evidence was excluded because the *Rivas* jury did not conclude that there had been

consent, the case was the subject of an appeal, and the evidence focused on the intentions

of the Rivases rather than the reasonable belief of Jorge.  <u>Athridge</u>, 474 F. Supp. 2d at

108-09.  As a result, it was held that the evidence would likely confuse the jury and

would be more prejudicial than probative.  <u>Id.</u>  As the Court stated in the section of the

Memorandum Opinion in which I granted Aetna's motion in limine to bar receipt of that

evidence:

---

[8] Plaintiffs claim that the "Court concede[d] that Aetna's defense of Iglesias bears upon the credibility and believability of its position that there is no coverage."  Memo at 15 (citing <u>Athridge</u>, 474 F. Supp. 2d at 108).  The Court made no such concession, but instead noted its "appreciat[ion]" that the Athridges [were] arguing" that the evidence was probative.  <u>Athridge</u>, 474 F. Supp. 2d at 108.

The jury in the <u>Rivas</u> trial found that the Rivases had **not** shown by a preponderance of the evidence that they did **not** consent to Jorge's use of the car.  <u>See</u> Verdict Form, Docket #224, <u>Athridge v. Rivas</u>, 89-1222 (01/12/2005) ("Do you find that the defendants have established by a preponderance of the evidence that they did not consent to Jorge Iglesias' use of the car on the day of the accident?" The jury checked the box indicating "No.").  To admit the verdict for the purpose of **establishing** consent, then, would be to assume a conclusion the jury did not reach.  Furthermore, the plaintiffs wish to show the verdict has not been overturned, but as the Athridges well know, an appeal of that verdict is currently before the D.C. Circuit.

The <u>Rivas</u> trial focused on the intentions of the *Rivases*, specifically as to whether they did not consent to Jorge's use of their car and whether they were negligent in permitting Jorge access to the keys to their car and, if so, whether their negligence proximately caused the accident.  <u>See</u> <u>Athridge</u>, 421 F. Supp. 2d at 143.  Neither of these issues in any way involves Jorge's reasonable belief in his entitlement to drive their car.  As Aetna argues, this subtle distinction may confuse the jury.  Defs. Mem. at 15.

Courts have consistently avoided potential jury confusion and unfair prejudice in related actions by excluding judicial findings, convictions, and similar evidence on Rule 403 grounds.  <u>See</u> <u>Faigin v. Kelly</u>, 184 F.3d 67, 80-81 (1st Cir. 1999) ("A lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings."); <u>Nipper v. Snipes</u>, 7 F.3d 415, 418 (4th Cir. 1993) ("judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'") (internal citations omitted); <u>Greycas, Inc. v. Proud</u>, 826 F.2d 1560, 1567 (7th Cir. 1987) ("A practical reason for denying [judgments] evidentiary effect is . . . the difficulty of weighing a judgment, considered as evidence, against whatever contrary evidence a party to the current suit might want to present. The difficulty must be especially great for a jury, which is apt to give exaggerated weight to a judgment.").  In light of the undue weight the jury is likely to give the <u>Rivas</u> verdict, and the unfair prejudice that

could result, the <u>Rivas</u> verdict and related evidence is not admissible.

Even if I found that the <u>Rivas</u> verdict and related evidence met the requirements for admissibility under the residual hearsay exception, I would still find the evidence too prejudicial to be admitted pursuant to Rule 403.  <u>See</u> <u>Hairston v. Washington Metro. Area Transit Auth.</u>, No. CIV. A. 93-2127, 1997 WL 411946, at *2 (D.D.C. Apr. 10, 1997).  Defendant's motion in this respect is thereby granted.

<u>Athridge</u>, 474 F. Supp. 2d at 108-109 (emphasis in original).

This issue was the subject of considerable briefing and, with one exception, the plaintiffs have not provided any new arguments that merit discussion.  That one exception deals with the cross-examination of the Rivases; plaintiffs argue that they should at least have been able to use the <u>Rivas</u> verdict to impeach the credibility of the Rivases for having a "self-interested motive [to give false testimony in the present case] in order to preserve their contentions on [the <u>Rivas</u>] appeal."  Memo at 15.  Not being permitted to do so, they argue, "rendered the subsequent efforts to impeach the Rivases virtually unintelligible."  Memo at 15 (citing Transcript, attached as Exhibit 3 to Motion).

But the transcript cited by the plaintiffs makes clear that they were fully able to convey this point during their questioning of Ms. Rivas.  Ms. Rivas was asked whether she had testified "in another part of the case" that Jorge did not have consent, and after she answered that she had, she was asked whether she was aware that she might "suffer serious financial consequences," including the loss of her real estate holdings, "in the other part of the case" if she testified differently in the present case.  Tr. 22:17-24:20.[9]

---

[9] It was even insinuated, in the presence of the jury, that Ms. Rivas had told her attorney that the "other part of the case made [her] feel like [she] was being raped."  Tr. 23:24-24:09.  The jury was reasonably able to conclude, then, that the Rivases suffered an adverse consequence in the other litigation.

The plaintiffs may not have liked or believed Ms. Rivas' responses,[10] but they cannot credibly argue that they were denied the opportunity to suggest in the presence of the jury that Ms. Rivas had a motive to lie stemming from the outcome of the <u>Rivas</u> case.

### 5.     Exclusion of Judge Greene's Opinion

Plaintiffs take issue with this Court's decision to exclude from evidence the findings made by Judge Greene in the case against Jorge, <u>Athridge v. Iglesias</u>, 950 F. Supp. at 1187.  <u>Athridge</u>, 474 F. Supp. 2d at 109-11.  As plaintiffs note, this issue has been "briefed extensively."  Memo at 17.  <u>See, e.g.</u>, <u>Plaintiffs' Memorandum in Opposition to Aetna's Motion in Limine</u> [#218] at 15-21; <u>Plaintiffs' Memorandum in Support of Their Renewed Motion for Partial Summary Judgment and in Opposition to Defendant's Renewed Motion for Summary Judgment</u> [#253] at 15-16.  Because no new arguments have been made, the Court sees no reason to revisit its prior opinions.

It is worth addressing, however, plaintiffs' argument that Aetna's involvement in the Iglesias litigation should have been addressed in advance of the trial because the resolution of that issue might have resulted in the admission of Judge Greene's findings. Memo at 17.  This argument is flawed first because in advance of trial the Court unquestionably did consider whether plaintiffs should be permitted to introduce evidence of Aetna's paying Pearson to help Starr defend Jorge. <u>Athridge</u>, 474 F. Supp. 2d at 108. As the Court has explained above, and in the section of Memorandum Opinon, quoted above, granting Aetna's motion in limine, the findings were inadmissible hearsay, the issues heard by Judge Greene were not before the jury in the present case, and the probative value of the findings were overwhelmed by the prejudice to Aetna that would

---

[10] The value to the plaintiffs of any further questioning on this topic would have likely been minimal or negative considering Ms. Rivas' testimony was consistent with her testimony in the <u>Rivas</u> case.

have resulted from their admission.  Id. at 110-11.  Hence, those very findings were

excluded for reasons that had nothing to do with Aetna's involvement in the Iglesias

litigation.

### 6.      MVSRA Instruction

Plaintiffs renew their argument that the jury should have been instructed that

"[t]here is a powerful presumption under the MVSRA [District of Columbia's Motor

Vehicle Safety Responsibility Act] that a driver operated the car with the owner's

consent." Memo at 18-19.

Specifically, plaintiffs requested the following instruction:

> The question as to whether Jorge Iglesias had a reasonable
> belief that he was entitled to operate the Rivases' car on the
> day of the Accident goes to his state of mind. In making
> this determination, you may consider all the facts and
> circumstances relating to Jorge Iglesias' use of the car on
> the day of the Accident.
>
> In making your determination you should consider
> that Exclusion 11 should be interpreted consistently with
> the District of Columbia's Motor Vehicle Safety
> Responsibility Act ("MVSRA"). The MVSRA is a
> remedial statute intended to promote safe ownership of
> motor vehicles and to provide alternative avenues of
> recovery for person injured by such vehicles.  The MVSRA
> achieves its purposes by imposing financial responsibility
> upon the owner of a vehicle with the express or implied
> consent of the owner.  There is a powerful presumption
> under the MVSRA that a driver operated the car with the
> owner's consent.  Consent may be express or implied from
> all of the facts.  If you find that Jorge Iglesias had consent
> to use the Rivases' car, he almost certainly had a
> reasonable belief in his entitlement to use the car.

The Court considered the propriety of this instruction in a Memorandum Opinion

and Order it issued on February 19, 2007. Memorandum Opinion and Order (2/19/07)

[#241] at 1.  I explained that I intended to give the following instruction pertaining to reasonable belief:

> First, a person may have a reasonable belief that he has the right to drive a car if the people who own the car expressly tell him that he can.  If you find that Jorge had consent to drive the car, he almost certainly had a reasonable belief that he was entitled to use the car.  The Rivases, of course, deny that they told Jorge he had consent, and you, and you alone, have to nevertheless judge the truthfulness of their testimony.  Even if you do not find express consent, you must still determine whether the people who own the car, by their actions or by what they failed to do and by what they said or did not say, led Jorge to reasonably believe that he had the right to use the Jetta.

Id. at 2.

I indicated first that I did not believe that the MVSRA could possibly be interpreted to create such a "powerful presumption" that the finder of fact must presume that the driver had the owner's permission from use of the car.  Id. at 2-3.  Instead, the presumption effectuated the MVSRA's purposes by  creating, *inter alia*, a presumption that the driver had the owner's consent so that the owner carries the burden of "proving that the driver did not have permission from the beginning to the end of the case."  Id. at 3 (citing Athridge v. Iglesias, 355 F. Supp. 2d 230 (D.D.C. 2005)).

I also expressed my concern with telling the jury that "[t]here is a powerful presumption under the MVSRA that a driver operated the car with the owner's consent.  Consent may be express or implied from all of the fact[s]," as plaintiffs request would tell the jury something that was "half true."  I insisted that the jury had to be given guidance as to the meaning and effect of the MVSRA presumption, i.e., that the burden of proving a lack of consent never left the owner. Id.

Finally, I pointed out that Aetna had conceded that it had to shoulder the burden the MVSRA thrust upon it. Accordingly, I instructed the jury that:

> In this case, the defendant, Aetna, has the burden of proof. If you believe, then, that the evidence is evenly balanced on an issue that Aetna must prove, then Aetna has not carried the burden of proof and your finding on that issue must be for the plaintiff.

Proposed Jury Instructions [#241] at 9.

I then stated:

> Aetna bears the burden of proving by a preponderance of the evidence that Jorge Iglesias did not have a reasonable belief that he was entitled to use the Rivases' car on the date of the accident.  The parties agree that Jorge Iglesias is entitled to coverage under the Aetna policy unless Aetna establishes that, on the date of the accident, Jorge fell within the policy exclusion for any person using a vehicle without a reasonable belief that the person is entitled to do so.

Id. at 14-15.

Finally, I stated that:

> The question in this trial is limited to a question under the insurance policy that Jesus Iglesias purchased from Aetna. As I have just explained, you must decide whether Aetna has convinced you by a preponderance of the evidence that Jorge drove the car without a reasonable belief that he was entitled to do so.
>
> First, a person may have a reasonable belief that he has the right to drive a car if the people who own the car expressly tell him that he can.
>
> If you find that Jorge had consent to drive the car, he almost certainly had a reasonable belief that he was entitled to use the car.  The Rivases, of course, deny that they told Jorge he had consent, and you, and you alone, have to nevertheless judge the truthfulness of their testimony.  Even if you do not find express consent, you must still determine whether the people who own the car, by their actions or by what they failed to do and by what

they said or did not say, led Jorge to reasonably believe that he had the right to use the Jetta.  Ladies and gentlemen, you should consider all of the evidence that bears on the question of Jorge's reasonable belief, such as the evidence that counsel pointed to in their closing arguments—whether or not Jorge could drive a stick shift car, whether or not he drove them in the past, that no charges were brought against him by the people who owned the car, his easy access to his aunt and uncle's home and a lack of a license to drive.  After you have considered all of the evidence, you must then determine whether Aetna has convinced you by a preponderance of the evidence that Jorge did not believe he was entitled to drive the car.

If you find Aetna has met its burden of proving Jorge did not have a reasonable belief that he was entitled to use the Rivases' car on the date of the accident, then you should find for Aetna.  If, however, you find that Aetna has not met its burden of proving that Jorge did not have a reasonable belief that he was entitled to operate the Rivases' car on the date of the accident, then you must find for plaintiffs.

Id. at 15-16.

Thus, I made it as clear as I possibly could that Aetna had the entire burden of proof, fulfilling the purpose of the presumption that the MVSRA creates.

The plaintiffs now argue that the failure to give their instruction enabled the jury to put too much emphasis on the Rivases' claim of non-consent, and that they otherwise would have concluded that Jorge "had a basis for believing" he was entitled to drive the vehicle.  Id.  Nothing supports that assertion beside speculation, which is utterly unjustified in light of the instructions that could not have emphasized more than they did the significance for the jury's deliberations of the MVSRA presumption.

Moreover, the MVSRA's presumption is not itself a piece of evidence and could not speak to what Jorge subjectively believed[11] or to what the Rivases expressly or implicitly did.  See Fed. R. Evid. 301, Advisory Committee Notes, 1974 Enactment (West pamphlet ed. 2006) (setting out the explanation in the House Conference Report which rejected an earlier version of Rule 301 that would have treated a presumption as evidence); Legille v. Dann, 544 F.2d 1, 6 n.34 (D.C. Cir. 1976) (quoting New York Life Ins. Co. v. Gamer, 303 U.S. 161, 170 (1938)) ("The presumption is not evidence and may not be given weight as evidence.").  Instead, the Rivases' ownership of the car driven by Jorge "create[d] a rebuttable presumption that [they] consented to [his] use of the car." Athridge v. Rivas, 312 F.3d at 477; see also D.C. Code § 50-1301.08[12] ("[T]he proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.").  Aetna shouldered the burden of proving non-consent, and therefore the jury was properly instructed.

## IV.   <u>Conclusion</u>

It has now been two decades since the accident and this is the twelfth year of litigation in this case alone.  I must say that every effort has been made to permit the Athridges to present all of the evidence they had as to Jorge's reasonable belief that he had permission to drive the car and to have the jury properly instructed as to the significance of that evidence.  The Athridges can ask for no more.  They had a fair trial

---

[11] Unless Jorge was aware of that presumption prior to driving the Rivases' car.  That of course was not the case.

[12] This reference to the D.C. Code is to the electronic version that is available on Lexis or Westlaw.

but the jury found against them.  Their motion for a new trial must be denied.

       An Order accompanies this Memorandum Opinion.


Dated:  November 10, 2008                            /S/
                                       JOHN M. FACCIOLA
                                       UNITED STATES MAGISTRATE JUDGE